# H. S. ROYSDON v. MARTHA E. CHOATE et al.

Middle Section.   September 1, 1932.

Petition for Certiorari denied by Supreme Court, December 17, 1932.

Will R. Storie, of Jamestown, for appellants.
W. C. Smith, of Jamestown, for appellee.

FAW, P. J. The bill in this case was filed by Mrs. H. S. Roysdon, wife of A. R. Roysdon, against Mrs. Martha E. Choate and her husband, Jasper Choate. All the parties are citizens and residents of Fentress County, Tennessee.

The subject-matter of this litigation is the ownership of certain timber on a tract of land in Fentress County, Tennessee, which land, with the timber thereon, was formerly owned by one Hiram F. Pogue, now deceased. Complainant claims title to the disputed timber by virtue of a deed executed by the widow and heirs of said Hiram F. Pogue, deceased, on November 9, 1923, to complainant and her then husband, James A. Allred (now deceased), and a deed to complainant executed by said James A. Allred on March 17, 1925. One of the grantors in the aforesaid deed of November 9, 1923, Celestia Bradley, was a minor at the time of its execution, and on January 6, 1925 (after she had attained her majority) said Celestia Bradley executed a deed by which she ratified and confirmed her said deed of November 9, 1923.

Defendant Martha E. Choate claims title to the said Pogue land and all the timber thereon, by virtue of a quit-claim deed executed to her by the widow and heirs of Hiram F. Pogue on July 11, 1931.

It is thus seen that complainant and defendant Martha E. Choate deraign title from a common source.

It was so stipulated by the parties at the trial below.

The deed under which complainant is claiming the timber in controversy reads as follows:

"KNOW ALL MEN BY THESE PRESENTS that in consideration of One Thousand ($1,000) Dollars, of which Five Hundred ($500) Dollars is paid in cash and the balance evidenced by two notes bearing even date with this instrument for $250 each, one due January 1st, 1925, and the other due January 1st, 1926, both bearing interest at the rate of 6% from date to secure the payment of which a lien is retained on the hereinafter described timber, we Celestia Bradley and Casto Bradley her husband, Hattie Anderson and Charles Anderson her husband and Abbigal Pogue, all of Fentress County, Tennessee, have bargained and sold and do hereby transfer and convey unto James A. Allred and H. S. Allred, of Jamestown, Tennessee, all the timber of every kind and character ten inches in diameter and over measured fifteen inches from the ground, except dogwood

and persimmon, which is included in this conveyance but is to be taken of any size desired, upon the following described tract or parcel of land, to-wit:

"Lying and being in the County of Fentress, State of Tennessee, and containing 181 acres being the land described in two deeds to Hiram F. Pogue, one from A. R. Roysdon and others dated 15th of January, 1896, and recorded in Book 'C2', page 306, and the other from James T. Pogue and others dated July 24th, 1902, recorded in Book 'C2', page 308, of the Register's Office of Fentress County, Tennessee, except such portions of said land as were sold by the said Hiram F. Pogue to A. G. Olmstead and others in July, 1902, by deed recorded in Book 'Y,' page 416, of the Register's Office of Fentress County, Tennessee, and being the land where the said Hiram F. Pogue formerly resided.

"But it is understood that certain timber within said boundary was heretofore sold by said Hiram F. Pogue and wife to C. J. Heuser on the 2nd of October, 1915, by deed which is recorded in the Register's Office of Fentress County, Tennessee, in Book 'L2', page 313, and that this conveyance is only intended to convey the reversionary interest of the grantors herein to said timber.

"And for said consideration there is also hereby conveyed unto the said James A. Allred and H. S. Allred our right of action against Tennessee Stave & Lumber Company for timber cut and appropriated from said land by it.

"And for said consideration there is also hereby granted unto the said James A. Allred and H. S. Allred a free right of way over and across said land for the purpose of cutting, removing and manufacturing said timber together with the free right to use such portions of said land as may be necessary or convenient for mill sites, buildings and log or lumber yards for use in the manufacture of said timber and the right to remove property of any kind placed thereon by them; but it is understood and agreed that said timber shall be removed from said land within twenty-five years from the date hereof and any timber remaining after said date shall revert and belong to the grantors herein. It is understood, however, that the right to use said premises for the manufacture of said timber does not include the right to use the dwelling house and garden on said land.

"TO HAVE AND TO HOLD said timber, rights and priviliges unto the said James A. Allred and H. S. Allred their heir's and assigns according to the terms hereof, hereby covenanting that we are lawfully seized and possessed thereof, have a good right and lawful authority to sell and convey the same, that it

is unencumbered, and that we will warrant and defend the title thereto against the lawful claims of all persons whomsoever; and the said Celestia Bradley being a minor the adult grantors guarantee that upon reaching her majority she will ratify and confirm this deed.

"WITNESS our signatures this 9th day of November, 1923."

The foregoing deed was noted for registration and registered in the Register's Office of Fentress County on November 12, 1923. (An error was made in the registration which will be mentioned later.)

The quit-claim under which defendant Martha E. Choate is claiming said Pogue land and all the timber thereon is as follows:

"For and in consideration of the sum of Three Hundred Dollars to us in hand paid the receipt of which is hereby acknowledged and the consideration of one note of Forty Dollars due in two years from date, and a lien is retained on the real estate herein conveyed to secured the payment of the note, we Abbie Pogue Hicks, Celestia Bradley, Hattie Anderson, Charlie Anderson, Casto Bradley as the heirs at law of Hiram Pogue, deceased, have bargained and sold, and by these presents do transfer and convey, demise, release and forever quit-claim unto Martha E. Choate, her heirs and assigns, all our title, interest and estate, legal and equitable, in the following described tract of land in the old Fifth Civil District of Fentress County, Tennessee. Beginning at the mouth of apple tree hollow at the creek; thence with A. R. Roysdon line, up the hollow to the Lick Gap; thence with the meanders of the Cliff to the Matilda Roysdon line; thence with her line down the hollow to the beginning, containing 200 acres more or less.

"Which land was conveyed to Hiram Pogue by deed of A. R. Roysdon et al., registered in Book 'C2', page 306-7, in the Register's Office of Fentress County, Tennessee.

"TO HAVE AND TO HOLD the said tract or parcel of land, with the appurtenances, estate, title, and interest thereto belonging to the said Martha E. Choate, her heirs and assigns forever.

"Witness our hands, this July 11, 1931."

The foregoing quit-claim deed was noted for registration and registered in the Register's Office of Fentress County on July 23, 1931.

In addition to the facts we have stated, complainant's bill contains allegations as follows:

"Complainant shows that this deed from the widow and heirs of Hiram F. Pogue, deceased, to the defendant Martha E. Choate is fraudulent, spurious and void, in so far as it pretends or undertakes to convey any of the timber in the boundary set out in the complainant's deed, of the dimensions set out above, and was

procured, as complainant believes and charges, with the fraudulent intent of trying to beat and swindle complainant out of her timber. The defendants not only having notice of her previous deeds and title to said timber, which was duly recorded as aforesaid, but the defendant, Jasper Choate, was personally warned after he took this deed of complainant's title, and cautioned and requested to not cut any of said timber, but notwithstanding all this the defendants have entered upon said lands and are cutting or having cut some of the largest and best timber on said land, far higher and in excess of the dimensions which complainant's deed gives her the right to remove, and defendants claim that complainant has no title to any of said timber.

"Complainant charges, on information and belief, that the defendants have made, or are undertaking to make, some sort of a trade with some Lumber Company at Monticello, Ky., who buys choice trees of the kind that the defendants are cutting on said lands, and are offering to sell same at a very low and insignificant price, and complainant is reliably informed that the defendants have already cut from $250 to $300 worth of her valuable timber, and, after being again warned to quit cutting, the defendants say they will cut on till stopped, and your complainant is unable to say at this time just how many trees, or how much of her timber has been cut. But complainant is informed and so charges that the lumber market is very dull at this time, and the cutting of the choice timber now, will greatly damage her in the sale of the rest of her timber, when a suitable time comes to market said timber, as timber buyers do not want timber when the best has been taken out. Anyway, the defendants have no interest in the timber and are trespassers in every respect, and threaten to continue their trespasses and depredations on said timber after being many times requested to stop.

"Complainant charges, on information and belief, that the defendants, and each of them, are wholly insolvent at law, and that they have taken this fraudulent deed, as to the timber on said land, for the fraudulent purpose of having some sort of claim of right, under which to cut complainant's timber, and that on account of the cutting of said choice trees your complainant is, and will be irreparably damaged more than the value of said timber cut, on account of it damaging the sale of the other timber, which damage will increase unless the defendants are restrained by writs of injunction from committing further waste and trespass upon said timber."

Upon the allegations of her bill, complainant prayed, (1) for the usual process (waiving answer under oath); (2) for a writ of injunction to restrain the defendants from further cutting or removal

and waste of said timber in any manner until the cause could be heard on its merits, and that on final hearing defendants be perpetually enjoined from cutting, removing, or in any way trespassing on said timber as specified in complainant's deed; (3) that defendants' deed, insofar as it seeks or purports to convey the timber on said tract of land, be declared void and canceled as a cloud on complainant's title to said timber; (4) that complainant have a decree against defendants for the damages done by the waste and other injuries arising from the cutting of said timber; (5) that, if necessary in the progress of the suit, an attachment issue to impound the trees and timber already cut, and that, if necessary, a receiver be appointed to take charge of and sell said timber; and (6) that complainant have such other, further and general relief as she may be entitled to.

The prayer is followed by the statement that "this is the first application for writs of injunction and attachment, and for a receiver in this case."

Defendants answered complainant's bill, and in their answer they deny that complainant is the owner of, or has any legal or equitable right or title to, any of the timber claimed by complainant in her bill, and defendants allege that defendant Martha E. Choate is the owner of the land and timber by virtue of the aforesaid quit-claim deed made to her by the Pogue heirs on July 11, 1931; and defendants deny the allegation of complainant's bill that said quit-claim deed is "fraudulent, spurious and void insofar as it pretends or undertakes to convey any of the timber" in dispute.

Defendants admit that they have entered upon said land and begun to cut said timber for the purpose of marketing same; and they admit that they have entered into a contract with a timber company at Monticello, Kentucky, for the sale of "their timber," which, they insist, they had "a perfect, legal and equitable right to do." However, they state that they have not, as yet, removed any of the timber from said land.

For further defense, defendants make allegations in their answer as follows:

"The complainant not having made reference in her bill to what deed or the registration of same as to what she was setting up her claim to said timber and the defendants not knowing definitely what deed she is claiming under but supposing and guessing that she is basing her claim upon an instrument registered in Book R 2, pages 21 and 22, in the Register's Office at Jamestown, Tenn., and it is alleged that said instrument is void for champerty and maintenance. That said deed is fraudulent, spurious and void. That said deed does not legally describe the land nor identify the timber. That the title to the timber was

not in the vendors at the time said instrument was executed. That the complainant failed to mark and identify said timber.''

Proof was taken and filed on behalf of the parties, respectively, and the case was thereafter heard by the Honorable C. J. Cullom, sitting as Special Chancellor, at the March Term, 1932, and the decree was entered on April 1, 1932, as follows:

''This cause came on to be heard on this the first day of April, 1932, and former days of this Court, before the Hon. C. J. Cullom, Special Chancellor, upon the bill, and answer of defendant, depositions on file and all the exhibits thereto, and the entire record in the case, from all of which the Court finds, orders, adjudges and decrees that the bill be sustained as a bill to enjoin a trespass on the timber of complainant, and that the deed from the heirs of Hiram F. Pogue to the defendant Martha C. Choate, dated the 11th of July, 1931, and filed as Exhibit 'A' to the deposition of Jasper Choate be canceled as a cloud on complainant's title insofar as it seeks or purports to convey the timber on the hereinafter described tract of land, and is removed as such.

''The Court further adjudges and decrees that the complainant is the owner in fee of all the timber of every kind and character, ten inches in diameter and over, measured fifteen inches from the ground, except dogwood and persimmon, which is included, but is to be taken of any size desired, upon the following described tract or parcel of land, to-wit:

''Lying and being in the County of Fentress and State of Tennessee, and containing 181 acres, being the land described in two deeds to Hiram F. Pogue; one from A. R. Raysdon and others, dated the 15th of January, 1896, and recorded in Book C 2, page 306, and the other from James T. Pogue and others dated July 24, 1902, recorded in Book C 2, page 308, of the Register's Office of Fentress County, Tennessee; except such portions of said land as were sold by the said Hiram F. Pogue to A. G. Olmstead and others in July, 1902, by deed recorded in Book Y, page 416, of the Register's Office of Fentress County, Tennessee, and being the land where the said Hiram F. Pogue formerly lived, and that the complainant have and recover the same from the defendants.

''The Court further finds and decrees that before the defendants took the deed from the Pogue heirs to Martha E. Choate, dated the 11th of July, 1931, filed as Exhibit A, to the deposition of Jasper Choate, that the defendants had actual notice from the grantors in said deed that they did not own, and were not selling, the defendants any timber on said land above ten inches

in diameter, and that the defendants also had notice of record by the registration of the original deeds themselves.

"There being no pleadings or proof in the record as to the value of the timber at the date of the deed from the Pogue Heirs to James A. and H. S. Allred, the Court further decrees that the complainant is allowed twenty-five years from the date of said deed, to-wit, the 9th day of November, 1923, in which to cut and remove said timber ten inches in diameter measured fifteen inches from the stump.

"It is further decreed by the Court that the injunction heretofore sued out in this case be made perpetual, and that the defendants, their agents, employees, successors, and assigns be perpetually enjoined from interfering with complainant in the removal or cutting of said timber within such time as they are allowed to remove the same.

"It further appeared to the Court that the defendants have cut certain timber on said lands above the diameter of ten inches. The Court is therefore pleased to refer the same to the Clerk and Master who will take proof and report:

"1. How many trees have the defendants cut on said land and the kind and diameter of said trees?

"2. Did the cutting of said trees by the defendants damage the sale of the other timber on said land as a whole; and if so in what amount?

"3. What damage in all has the complainant sustained by the cutting of said timber by defendants?

"It appeared to the Court that certain timber has been cut which will deteriorate if it is not disposed of immediately.

"It is therefore ordered by the Court that the Clerk and Master of this Court take charge of the timber cut, and advertise the same at five public places in Fentress County for ten days by posters and sell the same for cash and hold the money in Court for further orders. The Clerk and Master is directed to make the sale within 20 days if possible.

"If an appeal is not perfected no sale will be made.

"The foregoing decree and to all actions of the Court adverse to them, the defendants except and pray an appeal in the nature of a writ of error to the next term of the Court of Appeals at Nashville, Tennessee; which to them is granted upon the execution and filing of a proper appeal bond, or oath in lieu thereof. Upon application of defendants they were given until the close of business on Monday, April 4, 1932, for reasons appearing from affidavit on file requesting such extension, to execute and file an appeal bond in the case, or otherwise comply with the law.

"To the action of the Court in extending the time in which to file appeal bond or comply with the law the complainants excepted and did so at the time."

The defendants perfected the appeal in the nature of a writ of error, prayed and granted as aforesaid, by filing the oath prescribed for poor persons, and they have assigned errors in this Court.

We pause here to remark that an appeal in the nature of a writ of error in an equity cause tried according to the forms of chancery is unusual, as such cases are usually reviewed by simple appeal under section 9036 of the Code of 1932 (Shan. Code, sec. 4887), which provides that, "either party dissatisfied with the judgment or decree of the Circuit or Chancery Court, in a matter of equity tried according to the forms of the Chancery Court, may appeal to the Supreme or Appeals Court, and have a re-examination, in that Court, of the whole matter of law and fact appearing in the record."

· However, it is provided by section 9059 of the Code of 1932 (Shan. Code, sec. 4907), that, "an appeal in the nature of a writ of error lies, at the instance of either party, from the judgment or decree of the Court of Chancery, or of the County or Circuit Court in equity causes, in all cases tried according to the forms of chancery, upon the same terms, and subject to the same regulations, as an appeal from similar judgments or decrees."

And section 9062 of the Code of 1932 (Shan. Code, sec. 4910), which is a part of the same article on the subject of "appeal in the nature of a writ of error," provides that, "the bond required from the appellant, and the proceedings in the appellate court, upon an appeal in the nature of a writ of error, are the same as those prescribed in this chapter, upon an appeal."

It seems, therefore, that, in the instant case, the "proceedings" in this Court should be the same as if the case had been brought here by a simple appeal.

Appellants assign alleged errors in eleven separate assignments, but the main proposition asserted by appellants is that the evidence preponderates in their favor and the Chancellor should have decreed accordingly. The remaining assignments are in the nature of arguments or propositions advanced in support of the principal assignment just stated. We shall dispose of the questions arising out of the assignments of error in the order which seems most convenient, without attempting to follow the order of their assignment.

· 1. It is seen from the decree already quoted that the Chancellor found that "the defendants had actual notice from the grantors in said deed (meaning the quit-claim to Martha E. Choate) that they did not own, and were not selling, the defendants any timber on said land above ten inches in diameter." This finding of the Chancellor is abundantly supported by the proof.

The undisputed proof is that defendant Jasper Choate bought and paid for the land and had the quit-claim deed made to his wife, defendant Martha E. Choate; and the widow of Hiram F. Pogue testified that she told defendant Jasper Choate before the transaction was closed that they "had sold the timber and not to cut anything from ten inches up." Defendant Jasper Choate admits that he was so informed before he bought the land. We quote from his deposition as follows:

"1. Q. State your name, age, residence and occupation? A. Jasper Choate, 51 years of age, live at East Jamestown, Fentress County, Tennessee. I am a farmer.

"2. Q. Are you one of the defendants in the case H. S. Roysdon vs. Martha E. Choate et al.? A. Yes sir.

"3. Q. What relation are you to Martha E. Choate? A. She is my wife.

"4. Q. Did you purchase a certain tract of land in Fentress County, Tennessee, from the heirs of Hiram Pogue, deceased, and have them execute a deed to your wife Martha E. Choate? A. Yes sir.

"5. Q. Will you file the deed from the heirs of Hiram Pogue to Martha E. Choate, as Exhibit A to your deposition? A. Yes sir (and it is so filed).

"6. Q. Before you purchased said land while negotiating a trade for same. What did the heirs of Hiram Pogue tell you about the timber rights on said property and what did they direct you to do before purchasing said land? A. When we were talking about trading I went over there and looked at the land, some of the folks down there said they had sold the timber or made some timber deeds, I told them that I did not know whether I wanted to buy it or not. Mrs. Pogue said take her old deed and come to the Register's Office and examine the record. I sees three lawyers and they thought the timber that wasn't branded would go with the land."

The defendants did not file a plea of innocent purchaser, or interpose that defense by any pleading, which defense cannot be made at the hearing unless set up by plea or answer. Gibson's Suits in Chancery (3 Ed.), sec. 332. But this is immaterial in the instant case, for it is clear that defendants had actual knowledge of complainant's title to the timber—defendant Martha E. Choate being bound by the knowledge of her agent in the transaction.

2. Appellants say that the Chancellor erred in finding that they had constructive notice of complainant's rights by reason of the registration of the deed from the Pogue heirs through which complainant claims the timber in question.

In view of the fact that appellants had actual knowledge, the matter of constructive notice by registration becomes immaterial.

However, we may briefly state the record on this subject. Appellants say that the registration of complainant's timber deed from the Pogue heirs was ineffective as constructive notice for two reasons, viz: (a) that the Notary's certificate of acknowledgment of the grantors was defective, in that, it did not contain the words "for the purposes therein contained," and (b) the description of the land on which the timber stands was not correctly copied on the Register's books, and, as copied, did not sufficiently identify the land.

Prior to the Act of 1919, chapter 48, providing "a uniform form of acknowledgment for the authentication of acknowledgment for record of written instrument," the omission of the words, "for the purposes therein contained" from the certificate of the Notary was fatal to the registration of the instrument (Childers v. Coleman, 122 Tenn., 109, 122, 118 S. W., 1018, and cases there cited); but the Notary's certificate on said deed of November 9, 1923, under which complainant claims, is in conformity to the said Act of 1919, chapter 48, and is not defective.

As we have seen, the land was decribed in the deed of the Pogue heirs to Allred and wife by reference to two deeds through which Hiram F. Pogue acquired said land; that is to say, by reference to the registration of said deeds in Book C2, page 306, and Book C2, page 308, of the Register's Office of Fentress County, Tennessee, but (manifestly through a clerical error of the Register) said deed as registered showed that said two deeds to Hiram F. Pogue were registered in Book G2, page 306, and G2, page 308.

The registration of a deed is constructive notice only insofar as it correctly describes the property. Baldwin v. Marshall, 2 Humph., 116; Lally v. Holland, 1 Swan, 396, 401; Building & Loan Association v. Rogers, 104 Tenn., 437, 58 S. W., 234; Wilkins v. Reed, 156 Tenn., 321, 323, 300 S. W., 588.

But, as before stated, the matter of constructive notice by registration is immaterial in view of the actual knowledge of appellants.

3. It is insisted for appellants that title to the timber in question did not pass under the deed of the Pogue heirs to complainant and her former husband, James A. Allred, for the reason that the timber was not branded in the manner provided by the Act of 1901, chapter 54, entitled "an Act to regulate and provide for the branding of timber, to define the interests, rights, duties, and liabilities of those dealing with timber when branded, according to the provisions of this Act, and to provide punishment for the violations of this Act."

So far as appears, neither complainant nor her said former husband at any time adopted a timber brand, and the said Act of 1901, chapter 54, has no application to the facts of this case.

4. We concur in the finding and opinion of the Chancellor that "the complainant is the owner in fee of all the timber of every kind

and character, ten inches in diameter and over, measured fifteen inches from the ground, except dogwood and persimmon, which is included, but is to be taken of any size desired,'' upon the tract or parcel of land described in complainant's bill and in the decree of the Chancery Court.

We do not agree with the contention of appellants that the limitations of the complainant's title to timber ''ten inches in diameter and over, measured fifteen inches from the ground'' relate solely to the date of the said deed of November 9, 1923, but we are of the opinion, and hold, that complainant may enter upon the land described in said deed at any time or times within twenty-five years from and after the date of said deed, and cut and remove all dogwood and persimmon timber of any size she may desire, and any and all other timber ten inches in diameter and over, measured fifteen inches from the ground whenever the trees may be reached in the process of cutting during said period of twenty-five years.

5. There is no merit in appellants' assignment that ''the Court erred in not holding the instrument the complainant was claiming under void for champerty;'' nor in the assignment that ''the Court erred in sustaining the contention of the complainant that the defendants·had no right to even cut firewood from this tract of land.''

Complainant made no contention in her pleadings that defendants have no right to cut firewood from said tract of land, and we find no such adjudication in the decree.

6. Appellants' assignments of error are overruled, and the decree of the. Chancery Court is affirmed. The cause will be remanded to the Chancery Court of Fentress County for the execution of the reference, the adjudication of the costs accrued in that Court, and for such other orders and decrees as may be necessary to effectuate the decree affirmed by this Court.

The costs of the appeal will be adjudged against the appellants, Martha E. Choate and Jasper Choate.

Crownover and DeWitt, JJ., concur.